El Pueblo de Puerto Rico, demandante y apelado, *v.* Eusebio Gómez Moreno, acusado y apelante.

Núm. 8339.—*Sometido:* Diciembre 6, 1940. *Resuelto:* Diciembre 12, 1940.

*Juan Lastra,* abogado del apelante; *Hon. Procurador General George A. Malcolm* y *R. A. Gómez, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Eusebio Gómez Moreno fué denunciado ante la Corte Municipal de San Juan, Sección Segunda, porque en enero 8, 1939, ilegal, voluntaria y maliciosamente desde el vapor "Coloradan" atracado al muelle número 6 de la Bull Insular Line en el puerto de San Juan, P. R., hizo varios disparos de revólver con el propósito de herir a E. Fernández Betancourt, Rafael Collazo Moraza, Félix Duclós y José Rodríguez Jiménez, que se encontraban en una yola. También se le acusó de portar armas prohibidas.

Sentenciado por la corte municipal, apeló para ante la del distrito y celebrado en ésta un nuevo juicio conjunto para ambos casos según estipulación de las partes aprobada por la corte, fué condenado a pagar cincuenta dólares de multa por el acometimiento y a sufrir un mes de cárcel por la portación. Recurrió entonces para ante este tribunal imputando a la corte sentenciadora error en la práctica de la prueba y en su apreciación.

La evidencia del fiscal consistió en las declaraciones de tres de las alegadas personas acometidas—Duclós, Fernández Betancourt y Collazo Moraza—de Iluminado Torres, Policía Insular, y de Ricardo Cátala, y la de la defensa en

los testimonios de Luis Reyes, Rafael Monge y el acusado Gómez Moreno.

Argumentando los dos errores que señala en relación con la apreciación de la prueba, sostiene el apelante que la evidencia de cargo no demuestra con la claridad y certeza necesarias que fuera él el que disparara y en todo caso que lo hiciera con la intención de causar daño a persona alguna. Tampoco que portara un revólver.

Examinada dicha evidencia encontramos que los testigos Duclós, Fernández Betancourt y Collazo Moraza declararon que estando en un bote, al pasar cerca del vapor "Coloradan" sintieron disparos de arma de fuego y vieron que el acusado disparaba su revólver contra ellos desde el vapor, motivo por el cual se lanzaron unos al agua y otro se acostó en el fondo del bote.

Para usar sus propias palabras, transcribiremos las de uno: ". . . sentimos una detonación y me fijé a donde era la detonación y vi a este señor (el acusado) con un revólver en la mano haciéndonos disparos . . . y tuvimos que lanzarnos al agua para evadirnos de una bala . . . hacía los disparos desde la popa del vapor 'Coloradan' . . . por una claraboya . . . y lo vi cuando corrió con el revólver por encima de la cubierta."

Y encontramos también que el policía Torres manifestó:

"En ese día yo estaba en la esquina del muelle número 6; estábamos pendientes de ese muelle porque era tiempo de huelga de la 'U.T.M.' y otra Asociación de Trabajadores que dirigía el Sr. Eusebio G. Moreno. El Sr. Ramón Boria y yo estábamos en la esquina del vapor 'Coloradan' que estaba cargando y nosotros estábamos de espalda hacia la popa del barco y sentimos dos disparos y cuando salieron los primeros dos disparos dimos el frente porque creíamos que eran para nosotros y miramos alante y vimos que salieron tres disparos más y vimos que la bala salpicaba una yola y venían unos individuos dentro de la yola; entonces ellos se tiraron de la yola y nosotros nos dirigimos al barco arriba y cuando estábamos arriba el Sr. Eusebio Moreno bajaba muy nervioso por la escalera que subía al barco, y ahí lo cogí y lo arresté. Entonces todos gritaron: 'Euse-

bio Moreno fué'. Entonces al arrestarlo . . . . él dice: 'Déjeme bajar' y le dije: 'No señor, usted está arrestado, y entonces lo trajimos a San Juan a huellas digitales.''

Creída esa prueba como lo fué por el juez sentenciador, nos parece suficiente. No es inverosímil y revela el acometimiento por parte del acusado con arma de fuego y con intención de inferir daño violento en la persona de semejantes suyos, acompañada de la aptitud para realizarla al tiempo de intentarla, que es lo que exige la ley (artículo 232 del Código Penal, ed. 1937) para que se entienda cometido el delito que se le imputara—acometimiento. También lo es con respecto a la portación del arma prohibida, que constituye otro delito independiente de acuerdo con la ley y la repetida jurisprudencia de este Tribunal.

En cuanto al segundo error que se imputa a la corte en relación con la apreciación de la prueba, bastará decir que la admisión por parte del fiscal sobre la circunstancia de no llevar arma el acusado al subir al vapor, no tiene el alcance que le atribuye el apelante, como veremos en seguida.

Según el récord ocurrió lo que sigue: Declaraba el acusado y se le preguntó por su abogado si fué registrado al subir al vapor. Contestó que sí, que lo fué por el *watchman* del barco Marcial Torres. La defensa pidió que se le diera una oportunidad para citar al *watchman* y la corte ordenó al márshal que lo citara. Entonces la defensa manifestó: "El Sr. Fiscal me propone admitir . . . que se hacían esos registros . . . y que Marcial Torres registró al acusado." Y dijo el fiscal: "Yo admito eso, pero Marcial Torres no puede garantizar que dentro del barco no hubiera armas."

Y es de esa admisión que deduce el apelante que el fiscal quedó obligado a probar la procedencia del revólver cuya portación se le imputa y que como no lo hizo caen por su base tanto el delito de acometimiento como el de portación de arma prohibida.

 Por el tercero y último de los errores señalados se sostiene que se privó ·de un derecho fundamental al acusado al impedírsele preguntar sobre los motivos que tuvieron los testigos de cargo para declarar en forma hostil en contra suya.

Volviendo al récord encontramos que la defensa repreguntó extensamente al testigo del Fiscal Ricardo Cátala, sobre si las personas que iban en el bote pertenecían a alguna Unión de Trabajadores distinta y adversa a la del acusado y obtuvo por respuestas que el testigo era el Secretario de la Unión a la que pertenecían Fernández Betancourt, Collazo Moraza y Duclós, quienes estaban el día del suceso "haciendo una línea de piquete"; que el acusado no era miembro de su Unión, si que de la "I.L.A." y que en el vapor "Coloradan" se estaba trabajando no obstante la protesta que contra ello había formulado su Unión.

A ese estado había llegado el contrainterrogatorio cuando ocurrió lo que sigue:

"P.—¿Y Ud. como Secretario está informado si eso le era grato a la Unión suya que se trabajara allí?— R.—No, señor.— Fiscal.—Me, opongo.— Juez.—Se sostiene la objeción de El Pueblo.—Defensa.— Fíjese S. S. que esas personas que han venido a declarar como testigos son miembros de una Unión que estaba en huelga en aquel entonces; él es el Secretario; él dice que estaba en contacto con ellos, los estaba llamando; sabe lo que ellos estaban haciendo; sabe también que el acusado en esa época estaba en el 'Coloradan" y en el 'Coloradan' se estaba trabajando; que el fin de un piquete es suspender esos trabajos, y era la misión de ellos interrumpir ese trabajo que está en contra de la huelga de ellos; . . . y cremos que es pertinente la pregunta de si estos trabajadores estaban afectados por el hecho de estar dentro del barco ese día en unión de otras personas que estaban trabajando en el barco. En ninguna otra forma podría probarse el interés de esos testigos o el interés de un testigo en declarar en determinado caso en un hecho material para apreciar la credibilidad de la prueba.— Juez.—La corte sostiene la objeción del Fiscal.— . . . . —Defensa.—Tomamos excepción."

Prosiguió la prueba de cargo y se insistió en preguntas de la misma índole que fueron contestadas sin oposición. Se

practicó la prueba de descargo. Declaró extensamente el propio acusado en la misma línea y su testigo Rafael Monge, se expresó así:

"Resulta que ese día estábamos en movimiento huelgario en los muelles, las dos organizaciones estaban en desacuerdo, la "I.L.A." y la "American Federation of Labor", y ese día la compañía llamó al señor Moreno, don Carlos Ball, para que suministrara un personal para la descarga del vapor "Coloradan' el día 8 de enero del 39, y el señor Moreno vino a bordo a hablar con el ingeniero y el capitán . . . .Yo subí a bordo a conferenciar con Moreno, porque de él y de mí dependía el movimiento de la descarga del barco . . . y hablé con él de nuevo para suplir más personal y bajé a tierra otra vez . . . . cuando en eso el señor Moreno que bajaba la escala y el guardia Iluminado Torres lo cogió en la escalera."

Puede verse, pues, de lo que dejamos transcrito y con mayores detalles de la totalidad de la transcripción, que no obstante la negativa del juez, es lo cierto que el acusado logró introducir toda la evidencia que deseaba sobre el particular de que los testigos de cargo Duclós, Fernández Betancourt y Collazo Moraza pertenecían a una Unión de Trabajadores contraria a la suya, estando ambas en desacuerdo sobre si se debía o no descargar el vapor "Coloradan" y por lo tanto que el acusado no sufrió perjuicio alguno.

Además la pregunta cuando fué objetada por el fiscal ya había sido contestada por el testigo, resultando sin base todo lo que después se dijo y resolvió. Sin embargo, dando a la excepción tomada toda su fuerza y aceptando al existencia de una lucha abierta entre obreros de diferentes uniones y de testigos hostiles por tal motivo, dicha hostilidad podría servir para que la corte tomara con cautela sus testimonios, pero no para que tuviera necesariamente que rechazarlos por increíbles. Les dió crédito y no se nos ha demostrado que su conclusión sea errónea. Al contrario, la misma hostilidad que se invoca da fuerza de verdad a la imputación.

*Deben declararse los recursos sin lugar y confirmarse las sentencias apeladas.*