EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ISRAEL COLÓN ROSA, WILFREDO CUEVAS RUIZ y VÍCTOR FIGUEROA TORRES, acusados y apelantes.

*Número:* CR-66-358 *Resuelto:* 15 de octubre de 1968

*Edna Abruña Rodríguez, E. Armstrong de Watlington* y *Enrique Miranda Merced,* abogados de los apelantes; *J. B. Fernández Badillo, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Se radicó acusación de ataque para cometer asesinato contra Israel Colón Rosa, Wilfredo Cuevas Ruiz y Víctor Figueroa Torres, imputando que el 8 de agosto de 1961 con malicia, deliberación e intención firme de matar, acometieron a la persona de Francisco Olivo Cruz haciéndole varios disparos de revólver sin lograr herirlo. Por los mismos hechos se radicaron acusaciones de infracción al Art. 8 de la Ley de Armas (grave) y de infracción al Art. 6 de dicha Ley (menos grave). Todos ellos fueron convictos de los delitos imputados.[1]

La Sociedad para Asistencia Legal que los representa en este recurso, señala dos errores: (1) El admitirse por el tribunal en evidencia, las admisiones incriminatorias que hiciera uno de los acusados en una "vista administrativa" que

---

[1] Sólo apelaron las sentencias Israel Colón Rosa y Wilfredo Cuevas Ruiz.

se celebró en relación con los hechos del caso y, (2) Error del tribunal al negarse a trasmitir instrucciones al jurado sobre el delito de Acometimiento y Agresión, cuando la prueba así lo justificaba. Veamos primero este segundo error.

El policía Francisco Olivo declaró que el 8 de agosto de 1961 estaba de servicio con otro agente y recibieron una confidencia de que los apelantes andaban en un carro robado. Los agentes estacionaron el vehículo en que patrullaban en la Calle Villamil, Parada 18, y el testigo siguió solo hacia la Calle Gaviota. Al bajarse en un puentecito vio a los tres acusados en un automóvil Chevrolet que tenía la puerta del chofer abierta y la luz interior prendida. Era como la una de la mañana. Al ver ellos al testigo que iba vestido de paisano y a quien conocían, según este testimonio, se tiraron del carro y le dispararon rápido. El testigo se tiró al suelo y en esa posición hizo dos disparos a los acusados. Éstos se fueron corriendo disparando tiros, sin saber el testigo si le apuntaban a él o tiraban al aire. Disparaban con revólveres negros de cañón largo, y las detonaciones eran de calibre 38. No arrestó allí a los acusados. Al día siguiente le notificaron que Israel Colón Rosa se había entregado y que tenía una herida de bala en una pierna.

Contrainterrogado dijo que los apelantes dispararon dando "jalones" a la mano, no sabían disparar ni tenían experiencia como tiradores. Que los tres se bajaron por la misma puerta, la del conductor, se pegaron a una verja a 4 pies de ellos y dispararon. El testigo se encontraba como a 18 pies del automóvil y los acusados huyeron de espaldas a él.

Lo anterior es toda la prueba ocular en el récord sobre cómo ocurrieron los hechos del 8 de agosto y se hicieron los disparos. En sus instrucciones al jurado la Sala sentenciadora instruyó correctamente sobre el delito de agresión para cometer asesinato definido en el Art. 218 del Código Penal. Este artículo dispone de la siguiente manera:

"Toda persona que agrediere a otra, con intención de cometer asesinato, incurrirá en reclusión penitenciaria por un término de uno a quince años."

Terminadas las instrucciones la defensa solicitó que se dieran instrucciones sobre acometimiento y agresión grave. ([2]) La solicitud fue denegada por la Sala sentenciadora así: (R. pág. 297)

". . . Se deniega específicamente esa instrucción por dos fundamentos: Por entender que la agresión no es de hecho . . . por entender que en estos casos no hay ninguna prueba en ninguno de los casos para entender que no hubo agresión y si por casualidad se refiere al hecho de que no hubo heridos, el hecho de que no haya heridos no quiere decir que no haya agresión, y en segundo lugar por entender que no hay prueba ni evidencia que pueda ser considerada o creída por el Jurado para

---

([2]) En el curso del proceso, ocurrió el siguiente incidente ante el jurado. La defensa hizo la siguiente pregunta contrainterrogando a un testigo: (R. pág. 77)

"P. Esa supuesta agresión de que usted habla, ¿ocurrió después de estos ciudadanos darse a la fuga?"

A la pregunta se opuso el fiscal por haberse usado la palabra "supuesta", alegando que la prueba era que había habido una agresión.

"Hon. Juez: El Jurado puede o no aceptar la prueba del policía, pero la prueba que hay es de que hubo una agresión. . . . Si el Jurado le da crédito a lo que dice el policía me parece a mi que esa es una agresión.

Lcdo. Velasco Gordils: Entonces es un acometimiento.

Hon. Juez: El Tribunal instruirá al Jurado sobre qué veredicto podrá traer, por qué delito y se les explicarán esas definiciones, etc. Dará instrucciones sobre todos los posibles veredictos que pueda haber sobre esos extremos, pero si se le da crédito a él es agresión. ¿De qué grado? Ya le daremos instrucciones al Jurado oportunamente, pero realmente la prueba es de que hubo una agresión, de manera que lo que hay ante el jurado hasta ahora como prueba, sin que quiera decir que ellos la acepten, es que hubo una agresión.

Lcdo. Tirado Saltares: Vuestro honor, pero la palabra 'supuesta' debe permitirse hasta el momento del. . . .

Hon. Juez: Lo supuesto es la culpabilidad hasta el momento de empezar el proceso, después del proceso, no, es que deja de tener validez alguna legal, pero la prueba es que hubo la agresión.

Lcdo. Velasco Gordils: Es que no hay prueba . . .

Hon. Juez: Dígale 'supuesta' para no discutir mucho sobre esto.

Hon. Fiscal: Se retira la objeción."

entender que *habiéndose hecho los disparos, los acusados hubieran tenido otra intención que no fuera la de matar ni* de que la defensa niegue . . . aquí la evidencia de la defensa sencillamente niega el hecho de los disparos y toda la prueba de El Pueblo es que los disparos se le hicieron directamente a los policías, siendo el revólver un arma mortífera, *por lo que la inferencia, la única inferencia que hay, en ausencia de otra explicación, es que al que se le dispara con un revólver es con la intención de matarlo*".

■ La Ley de 10 de marzo de 1904—33 L.P.R.A. sec. 821 —dispone que "todo acto ilegal de inferir algún daño violento en la persona de algún semejante *con la intención de causarle daño*, cualquiera que sean los medios o el grado de violencia que se emplearen", constituye el delito de acometimiento y agresión. Sec. 1.

■ "Toda tentativa para cometer una agresión, o cualquiera señal de amenaza que demuestre en sí o con palabras una intención inmediata acompañada de actitud para cometer la agresión, será considerada como un acometimiento." Sec. 1. ([3])

■ La Sec. 6 de dicha Ley dispone que "Todo acometimiento y agresión será considerado con circunstancias agravantes en los siguientes casos: . . .

---

([3]) La definición de este delito se comprende mejor en el idioma inglés de su procedencia y que debe ser la versión preferida, según *Pueblo v. Díaz*, 62 D.P.R. 499 (1943); *Pueblo v. Fonseca*, 62 D.P.R. 433 (1943):

"The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is an assault and battery." (El *uso* de violencia ilegal en la persona de otro con la intención de causarle daño, cualesquiera que sean los medios o el grado de violencia usados). . . .

"Any attempt to commit a battery, or any threatening gesture showing in itself an immediate intention, coupled with an ability to commit a battery, is an assault." (Toda tentativa de cometer una agresión—uso de violencia ilegal en otro—o cualquier gesto amenazante que demuestre en sí mismo una intención inmediata acompañada de la habilidad para cometer una agresión, es un acometimiento).

"8. Cuando se cometiere con armas mortíferas en *circunstancias* que no revistiesen la intención de matar o mutilar." (⁴) (Énfasis nuestro.)

La negativa de la Sala sentenciadora a dar instrucciones al jurado sobre acometimiento y agresión grave o acometimiento grave bajo el supuesto de que cuando se dispara a una persona con un revólver no puede haber otra inferencia sino de que se hizo con intención de matarla siendo el revólver un arma mortífera, fue en quebrantamiento de la Ley anteriormente expuesta, y de nuestra doctrina.

El revólver es un arma mortífera. *Pueblo* v. *Dávila*, 23 D.P.R. 337 (1915). El inciso 8 de la Sec. 6 de la Ley de Acometimiento y Agresión al referirse a armas mortíferas para que el acometimiento y agresión o el acometimiento sean graves, no excluye el arma conocida como revólver. Lo que excluye son las *circunstancias* que revistiesen una intención de matar o mutilar en el uso de esas armas mortíferas. Por otra parte, la Sec. 1 de dicha Ley, al definir el delito de acometimiento y agresión, lo hace expresamente en términos de cualquier medio o cualquier grado de violencia ilegal que se emplearen con la intención de causar daño a otro. Entre los medios de usar violencia ilegal en otro, no se excluye el uso de un revólver.

■ Fue un error en derecho sostener, a la luz de las Secs. 1 y 6 de la Ley de Acometimiento y Agresión, que por haberse disparado en este caso al policía con revólveres, los

---

(⁴) El término "acometimiento *y* agresión" ahí debe leerse como acometimiento *o* agresión. *Lange* v. *Pueblo*, 24 D.P.R. 854 (1917). El delito separado de acometimiento grave existe. *Pueblo* v. *Matos*, 35 D.P.R. 859 (1926); *Pueblo* v. *Méndez*, 39 D.P.R. 653 (1929); *Pueblo* v. *Serrano*, 45 D.P.R. 918 (1933).

Acorde con lo expuesto y con la versión de origen de la definición de este delito, resultan dudosas las repetidas afirmaciones del juez hechas ante el jurado (copiadas en el escolio 2 anterior) al efecto de que si el jurado daba crédito a la declaración del policía, allí se había probado una agresión. El jurado, debidamente instruido, podía entender que se había probado un acometimiento grave.

hechos caían fuera del ámbito de la "intención de causar daño" del delito de acometimiento y agresión para constituir *únicamente* la "intención de cometer asesinato" del Art. 218, que no es otra cosa que la intención de matar con malicia premeditada.—Art. 199 Cód. Penal. (⁵)

▐ La diferencia entre la agresión con intención de cometer asesinato (Art. 218) y el acometimiento y agresión grave descansa sólo en la intención con que se realiza la agresión. En la agresión del primer caso, debe probarse como un hecho una intención específica de matar. *Pueblo* v. *Palóu*, 80 D.P.R. 364 (1958), págs. 387 y ss. y casos ahí citados. *El Pueblo* v. *Solares*, supra; *Pueblo* v. *Gómez*, 14 D.P.R. 127, 133 (1908); "sino que para constituir un atentado contra la vida es preciso que el agresor tenga específicamente la intención de privar al agredido de la vida"; y debe alegarse y satisfactoriamente probarse; *Pueblo* v. *Tribunal de Distrito*, 74 D.P.R. 838 (1953), pág. 855.

▐ En la agresión del segundo caso, debe probarse una intención de causar daño a la persona. De ahí que el delito de acometimiento y agresión grave sea una agresión de grado menor necesariamente comprendida en la agresión de grado mayor del Art. 218. *Pueblo* v. *Pérez*, 65 D.P.R. 693 (1946); *Pueblo* v. *Gómez*, supra. (⁶)

---

(⁵) Como cuestión de realidad: *El Pueblo* v. *Lange*, 24 D.P.R. 226 (1916); *Pueblo* v. *Matos*, 35 D.P.R. 859 (1926); *Pueblo* v. *Méndez*, 39 D.P.R. 653 (1929); *Pueblo* v. *Serrano*, 45 D.P.R. 918 (1933); *Pueblo* v. *Enamorado*, 37 D.P.R. 260 (1927); *Pueblo* v. *Cruz*, 25 D.P.R. 327 (1917); *Pueblo* v. *Haddock*, 43 D.P.R. 751 (1932); *Pueblo* v. *Gómez*, 57 D.P.R. 733 (1940); *Pueblo* v. *Cartagena*, 54 D.P.R. 870 (1939); *El Pueblo* v. *Solares*, 19 D.P.R. 445 (1913), constituyen ilustraciones de procesos y convicciones de acometimiento y agresión grave y de acometimiento grave, en que un acusado le hizo disparos a otra persona con un arma de fuego.

(⁶) En *Pueblo* v. *Cruz Collazo*, 95 D.P.R. 651 (1968) dijimos, a la luz de sus hechos:

"Bajo la norma típica de derecho que forma parte también de nuestra doctrina, en el proceso por acusación de agresión para cometer asesinato el jurado podía traer en este caso en lugar de un veredicto totalmente absolutorio o condenatorio de ese delito, un veredicto de agresión para cometer homicidio o de acometimiento y agresión grave, estando esos

■ En uno u otro caso, la intención de cometer asesinato —matar con malicia premeditada—y la intención de infligir daño corporal son elementos subjetivos mentales que se deducen de todos los hechos probados y circunstancias en que se perpetra la agresión.

■ En las circunstancias de este caso en que según el récord unos jóvenes de 19 años dispararon a un policía en la forma en que el policía testificó que ellos hicieron los disparos, al negar las instrucciones solicitadas de acometimiento y agresión grave bajo el supuesto de que disparar con un revólver a otra persona sólo infiere una intención de matar, la Sala sentenciadora privó al jurado de su facultad de determinar ellos como cuestión de hecho si hubo agresión y acometimiento grave, o acometimiento grave, y de haber una agresión, si ésta se realizó con la intención de matar o con la de causar daño corporal.(⁷)

Se privó al jurado de ser ellos los que como jueces de los hechos y conforme al inciso 8 de la Sec. 6 de la Ley de Acometimiento y Agresión, determinaran si las *circunstancias* en que se hicieron los disparos revestían la intención de matar o mutilar, o si no revestían tal intención.

El récord demuestra otro error perjudicial en las instrucciones, que si bien no ha sido señalado en apelación, consta en el récord la expresa oposición de los acusados al mismo.

delitos de menor gravedad abarcados o comprendidos dentro del mayor imputado. Por ser ese el derecho aplicable, la Sala correctamente dio instrucciones sobre los mismos." (Citas)

Tanto el Art. 286 del Código de Enjuiciamiento Criminal—ed. 1935—vigente al celebrarse el juicio en este caso, como la Regla 147 de Procedimiento Criminal ahora en vigor, han dispuesto que el jurado podrá declarar al acusado culpable de la comisión de cualquier delito inferior necesariamente comprendido en el delito que se le imputa.

(⁷) Cf: *Pueblo* v. *Montoya Montoya*, 95 D.P.R. 703 (1968), donde, ante la contención de que la convicción debió ser por el delito menor de acometimiento y agresión grave concluimos que no había razón para intervenir con la *apreciación de la prueba* que hiciera el juez sentenciador en cuanto a una intención de cometer asesinato.

Según se dijo al comienzo, se imputó en la acusación a los apelantes que con malicia premeditada, deliberación e intención y propósito decidido y firme de matar, acometieron al ser humano Francisco Olivo Cruz haciéndole varios disparos de revólver sin lograr herirlo. Refiriéndose a esa acusación instruyó la Sala sentenciadora: (R. pág. 250)

"Se alega del conjunto de la acusación, en la forma como está redactada, que hubo una conspiración entre ellos, una conspiración para agredir al policía.

Bien. Una conspiración en derecho, a los fines del delito penal, es como si dijéramos una sociedad, lo único que a diferencia de las sociedades comerciales o industriales o lícitas, ésta es una sociedad ilícita y es una sociedad ilícita porque tiene la *malicia* y tiene el *propósito* de realizar un hecho ilícito, *un fin ilícito que es el de atacar a una persona con intención de matarla.*

Al igual que la sociedad o que todas las sociedades, pues, los actos de uno de los socios realizados . . . los actos de uno de los socios hechos en el curso del negocio, en este caso del negocio ilícito, son . . . benefician o perjudican a los demás partícipes en dicha conspiración en forma tal que todos responden por los actos de uno y uno responde por los actos de todos siempre y cuando que esos actos hayan sido realizados dentro del fin y el propósito de la sociedad. (⁸)

Si hubo o no hubo una conspiración es una cuestión de hecho que el Jurado tiene que determinar de acuerdo con todas las circunstancias del caso.

Para que exista una conspiración no es necesario, no es indispensable que haya habido una reunión en un sitio y que se hayan tomado acuerdos ni que se haya delineado un plan. Puede surgir de momento, puede surgir hasta a medida que la transacción criminal va realizándose, si los unos realizan actos en beneficio de los otros o del conjunto de las actuaciones se ve que hay un propósito o fin común entre todos, pues, esto es conspiración.

---

(⁸) Lo anterior explica tal vez el porqué, habiendo el propio fiscal presentado como parte de su prueba una declaración extrajudicial del acusado Israel Colón Rosa completamente exculpatoria en cuanto a él, de los disparos imputados y del uso de un arma, el jurado lo halló igualmente culpable de tales actos.

Ahora, bien, tiene que aclarársele a ustedes que debido a la naturaleza de la transacción en este caso, principalmente en este caso del día ocho, hubo cierta evidencia de que estos acusados estaban bregando con un carro, que resultó que había cierta querella en cuanto a ese carro, de que el carro había sido hurtado.

El hecho de que pudiera haber habido una conspiración en relación con el hurto del carro no quiere decir que esa conspiración necesariamente existiera para el delito de ataque para cometer asesinato, que es una transacción independiente, a menos que los jurados *no* entiendan, como cuestión de hecho, que la transacción o que la conspiración continuó, *que habiendo empezado antes continuó a los fines de repeler el esfuerzo de la policía por arrestarlos y poder así recobrar los frutos del crimen anteriormente cometido* . . . pero si los señores jurados entendieran *que si bien hubo una conspiración en relación con el hurto del carro* y que esa conspiración terminó y que después surgió y que surgió por huir de la policía, *según tiende a indicar la prueba del Fiscal,* era una cosa independiente que no es una prolongación *de aquella actuación criminal anterior* sino que fue algo que surgió de momento y que en relación con ella no hubo un acuerdo de voluntades, entonces el jurado entenderá que no . . . entonces el jurado entenderá que no hubo conspiración en cuanto al delito de ataque para cometer asesinato, aunque hubiese habido conspiración entre ellos *para el hurto del automóvil, porque ellos no están aquí respondiendo por el hurto del automóvil* y sí están respondiendo por . . . solamente por el delito de ataque para cometer asesinato; pero si el Jurado entiende, por el resultado de la prueba y de todos los hechos, *que parte de la conspiración del hurto del automóvil* consistía en enfrentarse también a cualquier esfuerzo de la policía *por interrumpir esa acción del hurto del automóvil* y que lo uno era una continuación de lo otro, entonces, pues, el jurado podrá entender que la conspiración se extendió hasta conspirar en el delito de ataque para cometer asesinato." (Énfasis nuestro.)

La conspiración es un delito sustantivo menos grave, castigado en el Art. 62 del Código Penal—ed. 1937—según fue enmendado por la Ley Núm. 54 de 1948. "Si dos o más personas conspiraren (1) para cometer algún crimen; (2)". . . .

En *Pueblo* v. *Berenguer*, 59 D.P.R. 81 (1941), se imputó a éste conjuntamente con otras personas asesinato en primer grado porque en ocasión de un acto público conmemorativo, con deliberación, premeditación, mediante acecho, escondiéndose detrás del público que observaba y con la intención específica de matar, hicieron disparos al Gobernador Winship, matando al Coronel Luis A. Irizarry.

Convicto Berenguer, señaló como error la admisión de cierta prueba sobre hechos no alegados, prueba de una reunión de varias personas celebrada días antes y presidida por Berenguer, en donde habían acordado obstruir el acto y matar al Gobernador. Resolviendo este planteamiento sobre admisión de evidencia dijimos—pág. 90—que en la forma en que se imputó la comisión del delito la acusación llevaba consigo la alegación de una conspiración y la prueba impugnada versaba sobre la misma.

En *Pueblo* v. *Castro*, 75 D.P.R. 672 (1953), se imputó asesinato en primer grado mediante incendio y se alegó que "actuando los tres acusados de común acuerdo entre sí" dieron muerte ilegal, "habiéndose preconcebido y planeado dicho incendio por los tres acusados entre sí. . . ."

Ante otro planteamiento de admisión de evidencia sobre actuaciones separadas de algunos de los coacusados, señalamos hacia la prueba en el récord demostrativa de una previa conspiración y acuerdo de los tres para pegar fuego al establecimiento comercial y cobrar el seguro. En ambos casos resolvimos cuestiones sobre admisión o exclusión de prueba en las circunstancias dichas.

Aunque conviniéramos con la Sala que en las circunstancias de este caso la acusación alegaba una conspiración para matar, cf. *Pueblo* v. *Berenguer*, supra, no hay prueba legal competente de que los apelantes conspiraran entre sí para hurtar *ese* automóvil en que se encontraban, como punto de partida para pedirle al jurado que determinara si dicha conspiración inicial continuaba o no en pie hasta el acto de los

disparos "a los fines de repeler el esfuerzo de la policía por arrestarlos y poder así recobrar los frutos del crimen [hurto] anteriormente cometido"; ni hay base en el récord para pedirle al jurado que determinara "que parte de la conspiración del hurto del automóvil consistía en enfrentarse también a cualquier esfuerzo de la policía por interrumpir esa acción del hurto del automóvil y que lo uno era una continuación de lo otro"; y de determinarlo así el jurado, podía "entender que la conspiración se extendió hasta conspirar en el delito de ataque para cometer asesinato".

■ Fue error las detalladas instrucciones de conspiración para cometer un anterior delito de hurto por el cual no estaban siendo enjuiciados los apelantes. *Pueblo* v. *Túa*, 84 D.P.R. 39 (1961). El énfasis puesto sobre dicho delito anterior que quedó atado con el de agresión a través de la conspiración informada al jurado, tenía un efecto directo en cuanto al elemento de intención con que se hicieron los disparos. Particularmente, ante la omisión de instruirse sobre acometimiento y agresión grave o acometimiento grave.

Ante las objeciones de los acusados, la Sala sentenciadora invocó en el récord *Pueblo* v. *Márquez*, 45 D.P.R. 333 (1933) como autoridad para sostener las instrucciones de conspiración dadas. *Pueblo* v. *Márquez* no sostiene dichas instrucciones. En él la acusación imputó a dos personas el mutilar a otra acometiéndola y agrediéndola con palos. En las instrucciones, aquella sala llamó la atención al jurado que allí estaban acusadas dos personas, y procedió a instruirles (45 D.P.R. pág. 339 (1933)) que de acuerdo con el Art. *36* del Código Penal, "todas las personas complicadas en la comisión de un delito, ya cometieren el acto constitutivo del delito directamente, o ayudaren o instigaren a cometerlo, *son principales o autores del delito cometido.*"

Se imputó ahí como error el que se dieran instrucciones sobre dicho Art. 36, "toda vez que la acusación no imputaba

que los acusados 'actuaron conjuntamente' o bajo un 'designio común'." También, el que el Tribunal usara la frase "actuando conjuntamente" al dirigirse al jurado en ausencia de tal alegación. (Pág. 338)

Sostuvimos que cuando se acusa a dos personas como coautores o principales del hecho—el caso de autos—es correcto instruir sobre las disposiciones del Art. 36.(⁹) Rechazando el planteamiento de error, dijimos, pág. 340, "El designio común o la actuación conjunta que tiene en mente la defensa, solo se exige para determinados delitos como el de conspiración."

El caso de *Márquez*, puede observarse, no se relaciona con un problema de conspiración.

Lo aquí expuesto requiere la concesión de un nuevo juicio. No entraremos en detalle en cuanto al primer error señalado, sobre manifestaciones incriminatorias extrajudiciales de los acusados. A Israel Colón Rosa se le llamó a declarar en una investigación administrativa que realizaba la policía sobre estos mismos hechos. Ni se le ofreció inmunidad ni se le advirtió en cuanto a su derecho a no incriminarse o se le advirtió que lo dicho por él podía ser usado en su contra. En esa declaración Colón Rosa se incriminó en tanto se situó dentro del automóvil y junto a los que dispararon aunque negó haberlo hecho. Acusó a los otros dos acusados de disparar.

El jurado oyó la declaración de un Teniente de la Policía sobre las manifestaciones incriminatorias del otro apelante. Todo lo anterior fue directamente al jurado sin que la Sala resolviera primero lo pertinente a la voluntariedad y cumplimiento de las demás garantías constitucionales aplicables, bajo su criterio de que no eran confesiones. Podían haber

---

(⁹) Art. 36. "Todas las personas complicadas en la comisión de un crimen, ya fuere grave o menos grave, y que directamente cometieren el acto constitutivo del delito o no hallándose presentes, hubieren aconsejado su comisión o incitado a ella; . . . son principales o autores en el crimen cometido."

sido confesiones, pero no es necesario una discusión ahora. En el nuevo juicio a celebrarse la Sala de instancia considerará ese aspecto conforme a las normas de derecho al presente aplicables. Tomará en cuenta, inclusive, las disposiciones de la ahora vigente Regla 91 de Procedimiento Criminal sobre juicio por separado si el Pueblo ha de presentar manifestaciones extrajudiciales de un acusado que incriminen a su coacusado. ([10])

 Nada de lo anterior debe entenderse como que estamos decidiendo que el delito en cuestión es acometimiento grave o ataque para cometer asesinato. Devolvemos el caso para nuevo juicio por razón de encontrar errónea una parte importante de las instrucciones al jurado. Esto es, aquella en que se dice que cuando se dispara un arma de fuego la única inferencia que puede hacerse es que hay intención de matar. Eso claramente no es correcto.

*Se revocan las sentencias que condenan a los acusados de ataque para cometer asesinato. Se confirman las sentencias sobre portación y posesión de armas.*

El Juez Asociado Señor Torres Rigual no intervino.

---

([10])En este caso uno de los tres acusados solicitó juicio por separado y se denegó. Cf. *Reyes* v. *Tribunal Superior*, 84 D.P.R. 29 (1961).