# 2003 DTA 136

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN
## PANEL III

EL PUEBLO DE PUERTO RICO
Peticionante-Apelado

v.

JOSE DATIL COLOM
Peticionado-Apelante

Núm. KLAN-2001-00009

San Juan, Puerto Rico, a 25 de agosto de 2003

Panel integrado por su Presidente, Juez Ortiz Carrión y
los Jueces Segarra Olivero y Negroni Cintrón

Segarra Olivero, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

José Dátil Colom, en adelante el apelante, nos solicita la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual se le encontró culpable de la comisión de los delitos de agresión simple y amenazas, los cuales están tipificados en los Artículos 94 y 153 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4031 y 4194, respectivamente, y por los cuales se le impuso una multa de $500.00 dólares por cada delito.

Por los fundamentos que exponemos a continuación, confirmamos la sentencia apelada.

**I**

El apelante en su recurso ante nos cuestiona esencialmente la apreciación y suficiencia de la prueba testifical presentada en el juicio en su contra. Por ello, conviene que hagamos un resumen de dicha prueba, según surge de la transcripción de la evidencia que fue preparada por el Tribunal de Primera Instancia por orden de este Foro. █

El Ministerio Público presentó a los siguientes cuatro testigos: Hansel Moreno Torres, Judith Díaz García, Felipe González González y el agente Jorge Sepúlveda Vélez.

El señor Hansel Moreno Torres (en adelante Moreno) declaró que es el dueño del Restaurante Tantra en el Viejo San Juan. A mediados del año de 2000, cuando el restaurante Tantra aún no había iniciado operaciones al público, Moreno y el chef ejecutivo del restaurante, el señor Felipe González González, se encontraban en el local dándole los toques finales al mismo. Ese día, las puertas del restaurante estaban abiertas, el apelante pasó por allí y reconoció a Moreno porque éste participaba en un programa de televisión y se ofreció a ayudarlo. Moreno le contestó que no había mucho que hacer, pero permitió que el apelante se quedara a ayudarlo. El apelante cogió una escoba y comenzó a barrer por espacio de dos horas. Al finalizar, el apelante le solicitó a Moreno que le pagase y Moreno le dijo que realmente él no lo había contratado. Moreno ofreció pagarle $20.00 y el apelante no los aceptó porque le dijo que le debía $100.00.

El sábado siguiente por la noche, el 3 de junio de 2000, Moreno, su esposa Judith Díaz García, los dos hijos de ambos y el señor Felipe González estaban sentados en una mesa del restaurante cenando y planificando la inauguración. Las puertas del restaurante estaban cerradas, pero no tenían puesto el pestillo. Súbitamente, el apelante entró al local de forma alterada y gritó "*Puñeta ¿dónde están mis chavos, canto e cabrón, yo he estao esperando por to este tiempo. Mira, tú no me has pagao lo que tú me debes. Tú lo que eres es un mala paga.*" Moreno se paró y le dijo que para terminar la controversia le iba a pagar $30.00. En ese momento, el apelante dio un paso atrás y le metió un puñetazo a Moreno entre el cuello y la mandíbula produciéndole una laceración de aproximadamente pulgada y media. Entonces, la esposa de Moreno y Felipe González intervinieron para sacar al apelante del local, mientras el apelante seguía tirando manotazos. Una vez afuera, el apelante profirió palabras obscenas y se mantuvo gritando como por media hora. El apelante le dijo a Felipe González que lo iba a matar y que lo iba a mandar de regreso a Miami. Luego, llegó el policía municipal Lugo y entró al restaurante y trató de arreglar la situación diciéndole a Moreno que le pagara $30.00 dólares al apelante. En ese momento llegó al lugar el policía estatal Sepúlveda, quien se hizo cargo de la investigación del incidente. Moreno le contó a Sepúlveda lo que había ocurrido.

Moreno indicó que aunque no recibió atención médica por los golpes recibidos, sí sufrió de dolor en el cuello por aproximadamente cuatro a cinco días y que había recibido una laceración o rayazo en el área del cuello de alrededor de pulgada y media.

En el contrainterrogatorio, Moreno señaló que nunca le dio permiso al apelante para que entrara a su negocio. Sin embargo, la Juez aclaró que antes del incidente de la agresión, el apelante había estado por lo menos una vez en el local cuando estuvo allí barriendo. Moreno señaló que nunca había tenido negocios con el apelante y que lo había visto en varias ocasiones caminando por el Viejo San Juan, pero no dentro de su negocio. Moreno aclaró que él no fue quien comenzó la agresión y que no le pegó al apelante en ningún momento, ni siquiera después de haber sido agredido, que sólo le agarró las manos.

La segundo testigo del Ministerio Público lo fue la Sra. Judith Díaz, esposa del señor Moreno, quien indicó que trabajaba como administradora del Restaurante Tantra. Declaró que en la noche del 3 de junio de 2000, mientras se encontraba con su esposo e hijos y con Felipe González en el restaurante, el apelante entró allí gritando y sumamente alterado, y le pidió a su esposo que le pagara el dinero que le debía. Judith Díaz señaló que su esposo se ofreció a pagarle treinta dólares, a pesar de que no le debía nada al apelante. Que en ese momento, el apelante agredió a su esposo y ella y Felipe González se acercaron y trataron de sacar al apelante del local. Judith testificó que el apelante le propinó un golpe en el brazo derecho. Cuando finalmente pudieron sacar al apelante del restaurante, éste se quedó afuera empujando la puerta y gritando improperios. Los hijos de la testigo, esposa de Moreno, se encontraban gritando y llorando. Judith aclaró, a preguntas del Ministerio Público, cuáles habían sido los improperios vociferados por el apelante y dijo que el apelante amenazó de muerte a Moreno y a González.

Judith Díaz señaló que nunca contrató con el apelante ni lo autorizó a que entrara al restaurante. Reconoció que lo había visto por las calles del Viejo San Juan.

En el contrainterrogatorio, el abogado del apelante le preguntó detalladamente a la Sra. Judith Díaz sobre la distancia existente entre la puerta y la mesa donde estaba sentada ella y su familia cuando el apelante entró al local. Judith señaló que Felipe González no agredió al apelante, pero aclaró que González y ella lo empujaron hasta sacarlo del local.

El próximo testigo del Ministerio Público lo fue el señor Felipe González (González), que era el chef ejecutivo del Restaurante Tantra, quien esencialmente declaró lo mismo que los dos testigos anteriores respecto al incidente que culminó con la agresión del apelante a Moreno. Testificó, además, que el apelante específicamente lo amenazó a él y le dijo que lo iba a matar y que él era de La Perla. Además, González testificó que, días después del incidente, se encontró con el apelante en el Viejo San Juan y éste lo volvió a amenazar de muerte.

En el contrainterrogatorio, González aclaró que había visto al apelante antes del incidente de la agresión pero que éste nunca hizo gestiones para conseguirle un apartamento, ni lo fue a buscar al aeropuerto, y tampoco había hecho trabajos en el restaurante. González negó que hubiese establecido algún tipo de relación de trabajo con el apelante respecto al restaurante; sólo indicó que había visto al apelante dentro del restaurante el día en que barrió y estuvo allí por un tiempo sin haber sido contratado por Moreno.

El próximo testigo del Ministerio Público lo fue el agente Jorge Sepúlveda (Sepúlveda), quien fue el policía que investigó los hechos por los cuales se acusó al apelante. Este narró que el día de los hechos se personó al restaurante luego de que Moreno presentara una querella y observó que el apelante estaba "dialogando fuertemente" con el Policía municipal Lugo en la acera frente al negocio. Lugo le indicó a Sepúlveda que había surgido un incidente entre el apelante y Moreno por un dinero y le informó que el asunto quedaría resuelto si Moreno le pagaba $30.00 al apelante. Sepúlveda entró al restaurante a hablar con Moreno. Sepúlveda le dijo a

Moreno que él hubiera llevado el caso ante los Tribunales porque entendía que había ocurrido una agresión. El policía municipal Lugo se retiró porque entendió que la policía estatal había tomado jurisdicción sobre el asunto. Sepúlveda entrevistó a Moreno, quien describió nuevamente lo sucedido con el apelante. Sepúlveda trató de entrevistar al apelante, pero éste se negaba a brindar la información requerida. Posteriormente, se logró obtener la información del apelante y fue citado a comparecer al Tribunal.

En el contrainterrogatorio, Sepúlveda aclaró que el día de los hechos citó primero a las partes al cuartel para que presentaran la denuncia.

Concluida la prueba de cargo, la defensa presentó los testimonios de los señores Pablo Nieves Nieves, William Barret, Claudio Reck y el guardia municipal Manuel Lugo.

El señor Pablo Nieves Nieves (Nieves) testificó que conoce al apelante desde hace un año y medio aproximadamente y que la noche del 3 de junio de 2000 cuando se estaba yendo del Viejo San Juan se encontró casualmente con el apelante, quien le pidió "*pon*", a lo que accedió. El apelante también le pidió a Nieves que —antes de irse—, lo dejara frente al negocio Tantra para cobrar un dinero que se le debía. Nieves lo dejó frente al negocio y se estacionó más al frente en la calle Fortaleza. Nieves señaló que cuando dejó al apelante frente al restaurante, éste estaba tranquilo. Tiempo después de haberse estacionado, pudo observar que el apelante se encontraba hablando con un guardia.

En el contrainterrogatorio, Nieves aclaró que no tenía conocimiento de nada de lo ocurrido dentro del restaurante, pues no presenció esos hechos.

El próximo testigo de defensa lo fue el Lcdo. Melvin Rosario, quien, en síntesis, declaró que es abogado de profesión y que conoce al apelante hace aproximadamente siete (7) años porque ha utilizado sus servicios como emplazador, mensajero y para otros asuntos relacionados. El Lcdo. Rosario indicó que nunca ha tenido quejas del apelante, que siempre le ha hecho un buen trabajo y que, además, sabía que vendía peces a restaurantes y a particulares y que pintaba edificios en el Viejo San Juan. Señaló que trabaja en el Viejo San Juan y se ha topado con el apelante en numerosas ocasiones y que siempre lo ha visto trabajando. Por último, el Lcdo. Rosario declaró que no considera que el apelante sea una persona que tenga vicios, ya sea de alcohol o drogas, y que lo ha recomendado para que le trabaje a otras personas.

En el contrainterrogatorio, el Lcdo. Rosario aclaró que sólo ha compartido con el apelante en cuestiones relacionadas con el trabajo, pero que no lo conoce en el plano personal. El Ministerio Público completó su contrainterrogatorio al Lcdo. Rosario atacando el carácter del apelante.

El próximo testigo de la defensa fue Claudio Reck, quien declaró que es un comerciante que se dedica a hacer e instalar tragaluces y que la compañía para la cual trabaja fue contratada para hacer un techo en el patio interior del Restaurante Tantra. El señor Reck testificó que recordaba haber visto al apelante trabajando en el negocio Tantra en una de las ocasiones en que fue a supervisar el trabajo a principios del mes de mayo de 2000.

El próximo testigo de la defensa lo fue el señor William Barret, quien es contratista y trabajó como empleado de la compañía que estaba instalando el techo en el patio interior del Restaurante Tantra y que estuvo trabajando siete (7) días en el restaurante. Barret señaló que conoció al apelante allí, pues éste también se encontraba trabajando en Tantra haciendo diversas labores como pintar, mover materiales y, también, paraba el tráfico para que los empleados de la compañía pudieran bajar sus materiales frente al restaurante. Barret testificó, además, que vio al apelante en el restaurante durante todos los días que trabajó allí.

El último testigo de la defensa lo fue el guardia municipal Manuel Lugo (Lugo), quien declaró que en la noche del 3 de junio de 2000 se encontraba en su motora por la calle Fortaleza en el Viejo San Juan cuando el

apelante lo detuvo y le informó que lo habían agredido porque había pedido un dinero que se le debía en el Restaurante Tantra. Lugo relató que el apelante estaba muy molesto y acelerado y que le pidió que se calmara, que luego entró al local y el señor Moreno le informó que había habido una agresión y que ambas partes se habían agredido mutuamente. Lugo señaló que el señor Moreno se encontraba un poco alterado y estaba sin camisa. Lugo testificó que trató de arreglar la situación y de convencer al apelante de que recibiera los $30.00 que le había ofrecido el señor Moreno. Que cuando fue a hacerle la oferta al apelante, llegó la policía estatal, quien se hizo cargo de la investigación y, por ello, él se retiró.

Luego de evaluar la prueba presentada, el Tribunal encontró culpable al apelante por la comisión de los delitos tipificados en los Artículos 94 y 153 del Código Penal de Puerto Rico, *supra*, y le impuso una multa en cada caso de $500.00.

El apelante presentó una reconsideración, la cual fue declarada sin lugar.

Inconforme, el apelante presentó oportunamente y por derecho propio un escrito de apelación. Posteriormente y luego de que el Tribunal *a quo* preparara la transcripción de la evidencia presentada en el juicio, el apelante, por medio de su representante legal, presentó su alegato suplementario en el que sostiene que erró el Foro apelado al:

*"...concluir que la prueba del Ministerio Público estableció los elementos del delito imputado.*

*...encontrar culpable al apelante en virtud de una prueba que de ninguna manera derrota la presunción de inocencia y mucho menos estableció su culpabilidad más allá de duda razonable. Al validar la determinación de que la prueba presentada por el Ministerio Público fue suficiente para rebatir la presunción de inocencia.*

*...intervenir en la apreciación de la prueba testifical vertida durante el transcurso de la vista aun existiendo los elementos de excepción que le facultaban para ello y en su consecuencia resolver que: mereció credibilidad el testimonio contradictorio de la testigo; no darle peso alguno al testimonio de los testigos de la defensa presentados."*

El Procurador General presentó su alegato. Estando en posición de resolver, procedemos a así hacerlo.

## II

Por estar íntimamente relacionados los errores señalados, habremos de discutirlos de manera conjunta.

De los errores antes transcritos se colige que el apelante básicamente cuestiona la credibilidad que el Juez sentenciador le confirió a los testigos de cargo y la suficiencia de la prueba presentada por el Ministerio Público para sostener la convicción por los delitos de Agresión Simple y Amenazas.

El Artículo 94 del Código Penal de Puerto Rico, *supra*, 34 L.P.R.A. sec. 4031, dispone que *"toda persona que empleare fuerza o violencia contra otra para causarle daño"* incurre en el delito de agresión simple. Los elementos del delito de agresión son: el empleo de fuerza o violencia contra una persona y que ello se haga para causarle daño. D. Nevares-Muñiz, Código Penal de Puerto Rico Comentado, edición de 1995, a la pág. 144. De manera consistente con lo anterior, en *Pueblo v. Colón Rosa*, 96 D.P.R. 601, 609 (1968), el Tribunal Supremo resolvió que en el delito de agresión la intención de infligir daño corporal es un elemento subjetivo mental que se deduce de todos los hechos probados y circunstancias en que se perpetra la agresión.

De otra parte, en el Artículo 153 del Código Penal, *supra*, 34 L.P.R.A. sec. 4194, se tipifica como delito la amenaza al disponerse que será sancionado todo el que amenace a otro con causar a la persona o a su familia, honor o patrimonio, un daño determinado. Se incurre en el delito de amenaza, cuando una persona le expresa a

otra su intención de causarle daño. Para que se configure el delito, es necesario que: (1) exista una manifestación expresa de la voluntad de causarle un daño determinado a alguna persona determinada o a su familia; y (2) una apariencia de peligro o intranquilidad para quien esté destinada la amenaza o quien la escucha. Dora Nevárez-Muñiz, Código Penal de Puerto Rico, Revisado y Comentado, San Juan, págs. 249-50 (1997).

Es principio fundamental de nuestro ordenamiento jurídico que la culpabilidad de un acusado de delito debe ser probada más allá de toda duda razonable. *Pueblo v. Irizarry Irizarry*, 156 D.P.R. ___ (2002), **2002 JTS 68**; *Pueblo v. Carrasquillo*, 102 D.P.R. 545 (1974); *Pueblo v. Ortiz Morales*, 86 D.P.R. 456 (1962). Es un corolario de la presunción de inocencia que consagra en su Artículo II, Sección 11, la Constitución del Estado Libre Asociado de Puerto Rico, que a todo acusado se le pruebe su culpabilidad más allá de duda razonable. Por duda razonable entendemos aquella certeza moral que convence, dirige la inteligencia y satisface la razón; es una fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso. No debe ser pues, una duda especulativa o imaginaria. *Pueblo v. Feliciano Rodríguez*, **2000 JTS 47**, 150 D.P.R. ___(2000); *Pueblo v. Rosario Reyes*, 138 D.P.R. 591, 598 (1995); *Pueblo v. Meléndez Rodríguez*, 136 D.P.R. 587 (1994); *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 761 (1985); *Pueblo v. Cruz Granados*, 116 D.P.R. 3, 21 (1984). Nuestra casuística reconoce que la apreciación hecha por el juzgador de los hechos sobre la culpabilidad de todo acusado es una cuestión mixta de hecho y de derecho, por lo que la determinación de culpabilidad más allá de duda razonable es revisable en apelación como cuestión de derecho. *Pueblo v. Irizarry Irizarry, supra; Pueblo v. Echevarría Rodríguez*, 128 D.P.R. 299, 316 (1991); *Pueblo v. Pagán Díaz*, 111 D.P.R. 608 (1981); *Pueblo v. Serrano Nieves*, 93 D.P.R. 56 (1960).

En casos criminales, para que pueda obtenerse una convicción válida en derecho que derrote la presunción de inocencia que asiste a todo acusado, es un requisito *sine qua non* que el Estado presente prueba respecto a cada uno de los elementos del delito, su conexión con el acusado y la intención o negligencia criminal de este último. Esto debe establecerse más allá de duda razonable. *Pueblo v. Acevedo Estrada*, 150 D.P.R. ___ (2000), **2000 JTS 22**. Además, la prueba del ministerio fiscal tiene que ser satisfactoria; esto es, producir certeza o convicción moral en un ánimo no prevenido. La insatisfacción de la conciencia del juzgador con esa prueba produce la duda razonable que acarrea la absolución del acusado. *Id.* Las determinaciones de hechos del tribunal sentenciador pueden estar sostenidas por la prueba desfilada y resultar insuficientes para una convicción por haber duda razonable. *Id.*

Reconocemos que en nuestro sistema de derecho, los juzgadores de hecho merecen gran respeto y confiabilidad en la apreciación imparcial de la prueba, pues éstos gozan de la oportunidad de ver y escuchar directamente a los testigos. *Pueblo v. Fradera Olmo*, 122 D.P.R. 67 (1988); *Pueblo v. Rivera Robles*, 121 D.P.R. 858 (1988); *Pueblo v. Rosario Cintrón*, 102 D.P.R. 82 (1974). En ausencia de pasión, prejuicio, parcialidad o error manifiesto, y a menos que la apreciación de la evidencia se aleje de la realidad fáctica o la prueba sea inherentemente imposible o increíble, el tribunal apelativo debe abstenerse de intervenir con la apreciación de la evidencia hecha por el foro recurrido. *Pueblo v. Acevedo Estrada, supra; Pueblo v. Rodríguez Santana*, 146 D.P.R. 860 (1998).

En *Torres Pérez v. Colón García*, 105 D.P.R. 616, 623 (1977), nuestro Tribunal Supremo expresó que:

*"Donde se halla la médula del problema adjudicativo es cuando toca al juez dirimir conflictos en la prueba, decidir sobre probabilidades, descartar imposibles, hurgar mas allá de los testimonios para encontrar las verdades que muchas veces se ocultan tras meras apariencias, suplir a base de sus propias experiencias y conocimientos de la vida aquellos hechos no aportados articuladamente por los testimonios, pero inescapables al proceso inductivo de su inteligencia. Sin duda, este proceso exige más de la subjetividad del juzgador que ningún otro."*

## III

Apliquemos el derecho antes expuesto a la situación de autos.

La transcripción de la prueba testifical presentada en el juicio nos muestra el clásico ejemplo de versiones conflictivas de los hechos que el Tribunal *a quo* dirimió concediéndole crédito al testimonio de Moreno respecto a la agresión de la que fue objeto por parte del apelante y al testimonio de González respecto a las amenazas que le profirió el apelante en varias ocasiones. Es evidente que el juez sentenciador creyó la versión de los hechos presentada por los testigos de cargo a los efectos de que el apelante entró al local sumamente alterado, le pidió a Moreno que le pagara dinero y al éste no acceder a su reclamo el apelante lo agredió y, posteriormente, amenazó al señor González de muerte. Los testimonios de los testigos que presenciaron y fueron partícipes del incidente que provocó la acusación contra el apelante -Moreno, su esposa Judith García y González-, coinciden entre sí y no son inherentemente improbables e increíbles.

La prueba de cargo, la que le mereció entero crédito al Foro recurrido, contrario a la argumentación del apelante, resulta suficiente para establecer los elementos de los delitos imputados, derrotar la presunción de inocencia y demostrar su culpabilidad más allá de duda razonable. Se trata de prueba conflictiva que fue ponderada y dirimida por el foro de instancia, quien dio completo crédito a aquélla que fue aportada por el Ministerio Público y desmereció la que aportó el apelante. Se trata, pues, de una situación de apreciación de prueba, por lo que es al juzgador de los hechos a quien compete aquilatar y darle el peso y valoración que corresponda. *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 129 (1991); *Pueblo v. López Rivera*, 102 D.P.R. 359, 365-366 (1974).

De otra parte y según ya indicado, resulta improcedente intervenir con la apreciación que de la prueba haya hecho el tribunal de instancia, en ausencia de circunstancias que denoten pasión, prejuicio, parcialidad o error manifiesto.

## IV

Por los fundamentos expresados, se confirma la sentencia apelada.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 2003 DTA 136

**1.** Luego de numerosos trámites relacionados con la preparación de una exposición narrativa de la prueba, el 8 de agosto de 2000, este Tribunal emitió una resolución mediante la cual ordenamos la preparación de una transcripción de evidencia.