EL PUEBLO DE PUERTO RICO en interés de la menor N. I. R. M.

*Número:* O-81-142    *Resuelto:* 30 de octubre de 1981

*Héctor A. Colón Cruz, Procurador General,* y *Marta Quiñones, Procuradora General Auxiliar,* abogados del peticionario; *René Santiago Vega,* de la División Legal de la Oficina de Administración de los Tribunales, abogado del recurrido Julio Viera Morales, J.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Tras vista ante el Tribunal Superior, Asuntos de Menores, ante querella por indisciplina, la sala determinó que la menor N.I.R.M. no es responsable de sus actuaciones por padecer de sus facultades mentales y ordenó su ingreso, no sin antes expresar sus reservas, al Hogar de Niñas de Trujillo Alto, la cual es una de las instituciones públicas que supervisa el Secretario de Servicios Sociales. El tribunal expresó su preocupación por la carencia de instituciones adecuadas para los casos de menores con problemas de salud mental, e indicó que adoptaba el caso como uno de prueba.

El señor Procurador General plantea ante este foro que el tribunal de instancia solo estaba facultado en este caso para entregar la custodia de la niña al Secretario de Servicios Sociales para su ingreso en una institución adecuada. Dictamos orden de mostrar causa por la cual no debe revocarse la resolución recurrida.

El Art. 2 de la Ley de Menores, Ley Núm. 97 de 23 de junio de 1955 (34 L.P.R.A. sec. 2002) según enmendado, dispone, en parte:

Se confiere autoridad al Tribunal . . . para entender en los asuntos relacionados:

.      .      .      .      .        .       .       .

2. Con la custodia de cualquier niño.

3. Con una solicitud para ingresar a un niño en una institución adecuada para su tratamiento. . . .

El Art. 10 de la Ley, 34 L.P.R.A. sec. 2010, provee a su vez: (¹)

Si el juez determina que la situación o conducta del niño lo coloca bajo las disposiciones de la sec. 2002 de esta ley podrá dictar una orden:

.     .     .     .     .     .     .     .

4. Colocando al niño bajo la custodia del Secretario de Salud [léase ahora el Secretario de Servicios Sociales, 3 L.P.R.A. sec. 211d(a)] para el tratamiento de niños; o para que lo encomiende a un hogar de crianza; o para que disponga la forma que ha de tomar dicho tratamiento, sin necesidad de recluir al menor; Disponiéndose, que el Secretario de Salud no podrá dar por terminado el período de custodia, ni podrá sacar al menor de la jurisdicción del tribunal sin la previa autorización expresa de este último; o

5. Colocando al niño bajo la custodia de una organización o institución privada adecuada.

El Art. 8 de la Ley, 34 L.P.R.A. sec. 2008, expresa, por último:

Con arreglo a las órdenes del juez, el Departamento de Salud proveerá los centros de custodia y otros servicios para cualquier niño cubierto por las disposiciones de las secs. 2001 a 2015 de este título en armonía con las posibilidades existentes.

La parte recurrida estima que el Art. 8, así como las porciones citadas del Art. 2, facultan al juez a ordenar directamente el ingreso de un menor a una institución pública. El Procurador General apoya su contención en contrario en las disposiciones del Art. 10.

---

(¹) La Regla 9.4 de las Reglas de Menores, 34 L.P.R.A. Ap. I, dispone sobre este asunto en los siguientes términos: "El juez podrá ordenar que el menor quede bajo la custodia del Secretario de Salud para que éste lo ingrese en una institución u hogar de crianza adecuados. Si el juez considerase que el menor debe ingresar inmediatamente en una institución privada adecuada, podrá enviarlo directamente a la que corresponda, disponiéndolo así en la resolución."

■ Una lectura de los artículos citados refleja que el tribunal tiene facultad para entender en asuntos referentes a la custodia de un menor y con la solicitud para ingresarle en una institución adecuada para su tratamiento. (Art. 2, apartados (2) y (3).) En cuanto a solicitudes de ingreso de menores a instituciones adecuadas, la ley no especifica bajo qué situaciones puede el tribunal intervenir al respecto. En el Informe de la Comisión de Menores y Relaciones de Familia sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico el 19 de mayo de 1976 se dijo sobre este tema lo siguiente:

> Aparentemente, por no ser clara la Ley en cuanto a cuándo deba utilizarse esa facultad del Tribunal, en la realidad lo que se hace es radicar querellas por motivo de "incorregibilidad" cuando se interesa solicitar el ingreso de un menor a una institución. No obstante, puede muy bien darse el caso en que no se trate de menores con problemas de conducta, sino con problemas físicos, mentales u [*sic*] emocionales, que ameriten un tratamiento especial que no necesariamente tiene que ser su institucionalización. Pág. 95.

Se trata, pues, en cuanto al apartado (3) del Art. 2, de una disposición cuyo alcance no está claro y la cual no fue invocada por el tribunal en su resolución.

■ El Art. 10 expresa las alternativas que tiene el juez, si determina que la situación o conducta lo coloca bajo las disposiciones del Art. 2. Entre las situaciones o conductas contempladas en dicho artículo está la indisciplina, (2) procedimiento de que trata el presente caso. Las alternativas consisten en síntesis en las siguientes:

(1) Disponer que el menor sea sometido a exámenes para fines de diagnóstico;

---

(2) "(b) Que se estime indisciplinado, cuyos padres, encargados o maestros no puedan controlarlos y constituyan una amenaza para su bienestar o el de la comunidad; siempre y cuando el Secretario de Servicios Sociales certifique que el niño le ha sido referido y, luego de prestarle servicios en la comunidad, su conducta aún se estima indisciplinada."

(2) Desestimar la solicitud de ingreso en una institución;

(3) Colocar al menor en libertad a prueba;

(4) Colocar al menor bajo la custodia del Secretario de Servicios Sociales;

(5) Colocar al menor bajo la custodia de una organización o institución privada adecuada.

El problema, más superficial que sustantivo, surge cuando el tribunal selecciona la cuarta alternativa, citada antes *in toto*, del Art. 10 y coloca al niño bajo la custodia del Secretario de Servicios Sociales para que éste lo ingrese en una institución adecuada. En tal caso, según el texto de la legislación, es el Secretario quien debe designar originalmente la institución, y no el juez directamente. Este aspecto fue objeto de consideración en el reciente *Informe del Comité de Justicia Juvenil de la Séptima Conferencia Judicial*, octubre de 1980. En dicho informe, al recomendarse la ampliación de la discreción del juzgador en la fase dispositiva para que el tribunal a su discreción y en los casos apropiados determine el tipo de institución en que deberá ser ingresado el menor, se indica lo siguiente:

> En el presente la medida de custodia es impuesta por el tribunal y corresponde al Departamento de Servicios Sociales decidir a qué institución será conducido el menor y dicho Departamento, de ser necesario, establece la coordinación de servicios con otras agencias. El Comité es de opinión que en los casos que el tribunal lo estime apropiado, debe tener discreción para recomendar como parte de la medida dispositiva el tipo de institución a que debe ser referido el menor. Pág. 190.

Lo anterior no significa que la selección de la cuarta alternativa que le ofrece el Art. 10 priva al magistrado de toda ingerencia ulterior en asuntos relativos a la custodia del menor. El juez entrega al menor inicialmente al Secretario de Servicios Sociales, pero es para que lo ingrese, según expone el inciso (4) de dicho artículo, en

una institución *adecuada.* (³) Nada hay que impida al juez señalar las condiciones que estime apropiadas para que sean tomadas en cuenta por el Secretario de Servicios Sociales en cuanto al menor que le entrega su custodia. Su condición mental es ciertamente un aspecto importante que puede el juez señalar en su resolución para que sea tomado en cuenta en la determinación de la institución por el Secretario de Servicios Sociales. Además, el juez no se despoja —no puede despojarse— de su deber de continuar ejerciendo, si la situación lo exige más tarde, las funciones inherentes a su condición de *parens patriae.* En la Exposición de Motivos de la Ley de Menores, Ley Núm. 97 de 23 de junio de 1955, se señala como uno de los propósitos de la misma, el establecimiento de "un mecanismo legal que habilite a la autoridad judicial para ejercer con relación a los niños abandonados y a los niños desajustados y con relación a sus padres o a las personas encargadas de su cuidado y mantenimiento, aquellas funciones inherentes a su condición de 'parens patriae'. . . ". En el ejercicio de esa condición, el tribunal puede requerir informes periódicos que le permitan revisar el caso. A tal efecto, el Art. 13 de la referida ley, 34 L.P.R.A. sec. 2013, dispone que "Cualquier orden o resolución relacionada con un niño podrá ser modificada por el juez en cualquier momento. . . ." y el Art. 12 (34 L.P.R.A. sec. 2012) impone al Secretario de Servicios Sociales el deber de remitir al juez los informes periódicos que el juez solicite sobre la condición y progreso físico, emocional y moral del menor.

---

(³) La literatura sobre la condición de las instituciones para jóvenes delincuentes en Puerto Rico es sumamente amplia. Consúltese: el *Informe del Comité de Justicia Juvenil de la Séptima Conferencia Judicial,* 1980, pág. 206 y ss.; *Informe sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico por la Comisión de Menores y Relaciones de Familia,* 1976, pág. 278 y ss.; *Estudio del Sistema de Justicia Juvenil,* Technical Services of Puerto Rico, Inc., vol. III, 1977; *Estudio de las instituciones para el tratamiento y rehabilitación de menores que dirige el Departamento de Servicios Sociales,* Estudios Sociales y de Salud, Inc., 1976. Para una bibliografía más completa, véase la incluida en el informe primeramente citado.

■ Tampoco puede olvidarse, dado el papel del juez como guardián de la Constitución, que la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado provee que "Será política del Estado Libre Asociado . . . reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". El aspecto rehabilitativo de nuestra Ley de Menores es claro tanto en su propósito, como en su contenido. [4]

■ Al actuar sobre la base del cuarto apartado del Art. 10, el juez deberá en consecuencia entregar la custodia del menor al Secretario de Servicios Sociales, mas, en descargo de la responsabilidad que en última instancia le impone la Ley, el juez podrá requerir del Secretario la sumisión de informes y recomendaciones periódicos que le permitan al magistrado evaluar de tiempo en tiempo la medida impuesta, señalar vistas sobre el progreso y ajustes del menor y disponer, cuando lo estime necesario para cumplir su encomienda estatutaria, el cambio a otra institución o la imposición de otra medida.

*Por las razones expresadas, se revoca la resolución recurrida y se devuelve el caso a instancia para procedimientos consistentes con esta opinión.*

---

[4] Sobre el problema del derecho a tratamiento, así como sobre el poder de supervisión de los tribunales de las instituciones para jóvenes delincuentes, véase: *Informe del Comité de Justicia Juvenil de la Séptima Conferencia Judicial,* 1980, pág. 43 y ss.; R. Heugle, Jr., *The Right to Treatment for Juvenile Offenders,* 26 Loyola L. Rev. 360 (1980); S. M. Davis, *Rights of Juveniles,* New York, C. Boardman Co., 1980, sec. 6.7, pág. 6–20 y ss.; Note, *Do Juvenile Courts Have a Duty to Supervise Child Care Agencies and Juvenile Detention Facilities?,* 17 Howard L.J. 443 (1972); A. Volenik, *Right To Treatment: Case Developments in Juvenile Law,* 3 Justice System J. 292 (1978); W. Kluwin y J. Walkowski, *Constitutional Right to Treatment for Juveniles Adjudicated to be Delinquent,* 12 Am. Crim. L. Rev. 209 (1974); D. Skemp, *Establishment of a Constitutional Right to Treatment for Delinquent Children,* 26 Baylor L. Rev. 366 (1974); D. Renn, *The Right to Treatment and the Juvenile,* 19 Crime & Delinquency 477 (1973); Note, *Judicial Recognition and Implementation of a Right to Treatment for Institutionalized Juveniles,* 49 Notre Dame L. 1051 (1974).