# 2002 DTA 94

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

EL PUEBLO DE PUERTO RICO
Apelado

v.

ANTONIO PIETRI CANDELARIO
Apelante

Núm. KLAN-01-01095

San Juan, Puerto Rico, a 1 de mayo de 2002

Panel integrado por su Presidente, Juez Brau Ramírez,
el Juez Aponte Jiménez y la Jueza Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos Antonio Pietri Candelario, en adelante, el apelante, solicitando la revocación de una Sentencia emitida por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Yauco. Mediante dicho dictamen, el tribunal *a quo* lo encontró culpable de infringir el Art. 95  del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4032.

Por los fundamentos que expondremos a continuación, se confirma la Sentencia recurrida.

### I

Conforme surge del expediente ante nuestra consideración, el 5 de septiembre de 2000, se presentó una denuncia contra el apelante. En la misma, se le imputó una infracción al Art. 95, *supra*, por hechos acaecidos el 31 de agosto del 2000 en la escuela José Onofre Torres, del Municipio de Yauco, donde el apelante fungía como director escolar. La denuncia lee como sigue:

*"El referido acusado, Antonio Pietri Candelario, allí y entonces, ilegal, voluntaria, maliciosamente, a sabiendas y con la intención criminal violó lo dispuesto en el Artículo 95 del C.P.P.R., consistente que en fecha, hora y sitio según arriba indicados, éste agredió con sus manos al menor Jorge L. Sánchez Caraballo en el cuello, brazo y lado derecho de la cara, resultando con hematomas y laceración en el cuello, brazo derecho e inflamación en el oído derecho.*

*El agravante consiste en que la agresión se cometió por un varón adulto en la persona de una mujer o niño; fue atendido por el Dr. Orlando Brinn Esparra [Varas] Lic. # 8600."*

El 11 de mayo de 2001, se celebró el juicio por tribunal de derecho, culminando el 13 de julio del mismo año.

Según surge de la exposición estipulada, la prueba presentada por el Ministerio Público consistió del testimonio de Jorge Luis Sánchez Caraballo, la víctima, Juan Carlos Medina, Orlinda Caraballo Vélez, Ana Rita Catalá Franceschini, Jorge Torres Ruiz, Eugenia Orengo Avilés, Migdalia Vélez Báez, Agente Quiñones y el Dr. Orlando Brinn Varas. A su vez, la prueba del apelante consistió en su propio testimonio y el de Tatty Escobar como testigo de reputación.

Jorge Luis Sánchez Caraballo, en adelante, Sánchez Caraballo, declaró que tiene 14 años y que, al momento de los hechos, cursaba el octavo grado en la escuela José Onofre Torres en Yauco. Testificó que el 31 de agosto de 2000, se encontraba en el comedor de la escuela. Mientras se dirigía a la mesa, hizo unos ruidos con sus tenis. Al sentarse, el apelante le haló la oreja. Según declaró Sánchez Caraballo, éste le preguntó al apelante

porqué le había halado la oreja y, acto seguido, el apelante comenzó a darle puños en la espalda y por el cuello con la mano abierta y con el puño cerrado. (E.E.P. págs. 1-2.) Indicó Sánchez Caraballo que una vez el apelante terminó de golpearlo, lo agarró por el brazo derecho, le *"espetó"* las uñas en el brazo y lo llevó a la oficina. Allí se encontró con el profesor Rodríguez quien fue a buscar a la madre de Sánchez Caraballo.(E.E.P. págs. 2.)

Por su parte, Juan Carlos Medina declaró que tiene 13 años y que, al momento de los hechos, cursaba el octavo grado en la escuela Jose Onofre Torres de Yauco. Testificó que el 31 de agosto de 2000, se encontraba sentado en el comedor de la escuela en la mesa de al lado mirando hacia al frente de Sánchez Caraballo. Habían más personas en la mesa, pero no recuerda quiénes estaban allí. Declaró que el apelante se encontraba de espalda a Sánchez Caraballo en el comedor. Indicó que otros estudiantes tiraron comida al lado del apelante y éste, creyendo que Sánchez Caraballo la había tirado, lo cogió por la oreja, lo empujó contra la silla y comenzó a golpearlo por la espalda y el cuello. (E.E.P. pág. 5.) Declaró que, antes del incidente, Sánchez Caraballo chilló los tenis y el apelante le dijo que no lo volviera a hacer. Luego de esto fue que los compañeros comenzaron a chillar los tenis y el apelante agarró a Sánchez Caraballo por la oreja. (E.E.P. págs. 4-5.) Declaró que cuando el apelante golpeó a Sánchez Caraballo, éste le dijo que él (el apelante) no era su padre y no le podía dar. El apelante comenzó a golpearlo y Sánchez Caraballo empezó a llorar. Luego, el apelante tomó por el brazo a Sánchez Caraballo y se lo llevó del comedor.

Orlinda Caraballo Vélez declaró que es la madre de. Sánchez Caraballo y que, el día de los hechos, como a la una menos cuarto de la tarde, el profesor Rodríguez llegó a su casa y le indicó que la venía a buscar porque su hijo estaba llorando en la oficina de la escuela. (E.E.P. págs. 6-7.) El apelante le explicó que su hijo había chillado las gomas de sus tenis y que tenía que decir quiénes fueron los otros estudiantes que chillaron sus tenis y que por esa razón lo había reprendido. Luego se encontró a su hijo en la oficina quien estaba llorando. Declaró que la oreja de su hijo estaba inflamada y tenía rasguños por el cuello y por la parte trasera de la oreja derecha. Además, tenía marcas de uñas en el lado derecho del brazo derecho. (E.E.P. págs. 6-7.)

La cuarta testigo del Ministerio Público, Ana Rita Catalá Franceschini, declaró que es trabajadora social en la escuela José Onofre Torres y que el día de los hechos llegó a su hora de almuerzo a las 12:25 p.m. El oficial Quiñones la llamó a la oficina de la orientadora donde ésta encontró a Sánchez Caraballo lloroso. Declaró que Sánchez Caraballo le contó que el apelante le había pegado. (E.E.P. pág. 8.) Testificó que Sánchez Caraballo mostraba unas marcas en el brazo derecho, en la parte superior de la espalda y que el oído derecho estaba rojo. Al día siguiente, 1 de septiembre de 2000, se reunieron: Sánchez Caraballo, sus padres, el apelante y la testigo a las 7:50 a.m. en la oficina de la escuela. Luego de esta reunión, ella habló con el apelante y éste le manifestó que entendía, que el niño le había faltado el respeto y él no podía permitir eso. (E.E.P. pág. 8.)

El quinto testigo del Ministerio Público, Jorge Torres Ruiz, quien es maestro de la escuela José Onofre Torres, declaró que el día de los hechos como a las 11:00 a.m., se encontraba dando rondas en el comedor (de la escuela) y escuchó un chillido de tenis. Declaró que desconocía de donde provenía el ruido. (E.E.P. págs. 10-11.) Testificó que observó al apelante llamándole la atención a Sánchez Caraballo y luego se volteó. Acto seguido se volteó de nuevo y observó al apelante llevarse a Sánchez Caraballo agarrándolo por el brazo. Declaró que cuando vio por primera vez al apelante llamándole la atención a Sánchez Caraballo, el apelante le habló a éste en el oído. Sin embargo, no pudo escuchar lo que éste le dijo. (E.E.P. págs. 10-11.)

Eugenia Orengo Avilés, sexta testigo del Ministerio Público, declaró que al momento de los hechos se desempeñaba como encargada del comedor de la escuela José Onofre Torres. Ese día se encontraba en la entrada del comedor llevando el conteo de los niños que entraban. Indicó que observó cuando el apelante y Sánchez Caraballo pasaron con su bandeja, aunque no pudo precisar quién entró primero. Testificó que no estaba pendiente a lo que ocurría dentro del comedor y que lo único que vio fue cuando el apelante sacó a Sánchez Caraballo agarrándolo por el brazo. (E.E.P. pág. 11.)

Migdalia Vélez Báez, séptima testigo del Ministerio Público, declaró ser orientadora profesional. El día de los hechos se encontraba en la fila del comedor llevando el conteo de los estudiantes. Indicó que un niño le dijo: "*Miss mire lo que hace el director*", y observó al apelante saliendo con Sánchez Caraballo agarrándolo por el brazo. (E.E.P. pág. 12.)

El octavo testigo del Ministerio Público, el agente Quiñones declaró que se encontraba en el patio de la escuela cuando le informaron que fuera a buscar a un niño que estaba llorando en al oficina. Al llegar, encontró a Sánchez Caraballo llorando, y éste le indicó que había tenido un incidente con el apelante en el comedor. El testigo llamó a la trabajadora social para que lo acompañara en la entrevista con el estudiante. Declaró que en la entrevista, Sánchez Caraballo le dijo que chilló los tenis y luego el apelante lo regañó. (E.E.P. pág. 14.) Continuó declarando que Sánchez Caraballo le indicó que los demás compañeros continuaron chillando los tenis y que esta actuación provocó que el apelante le pegara, lo levantara por la oreja, y se lo llevara por el brazo para la oficina. (E.E.P. pág. 14.) Testificó que Sánchez Caraballo le mostró unas marcas de uñas en el brazo derecho, tenía la oreja rojiza y hematomas en la espalda. Al otro día, el agente se reunió con la madre, el niño y la trabajadora social, y le informó al apelante que lo iba a denunciar por agresión, a lo que el apelante le contestó que hiciera lo que tenía que hacer. (E.E.P. pág. 14.)

El Dr. Orlando Brinn Varas declaró que es pediatra y que Sánchez Caraballo ha sido su paciente por varios años. Testificó que Sánchez Caraballo fue llevado a su oficina el 31 de agosto de 2000, más o menos a las 4:00 p.m. por una alegada agresión. Declaró que Sánchez Caraballo le manifestó que el apelante lo había agredido. (E.E.P. pág. 15.) Conforme testificó, el examen físico mostró un enrojecimiento en la oreja derecha, dolorosa a la palpación. También presentaba una abrasión en la parte posterior del cuello de un centímetro de área. En la parte superior del brazo derecho, mostraba una abrasión del mismo tamaño. En la parte superior derecha de la espalda, también se encontró una abrasión del mismo tamaño. (E.E.P. pág. 15.) Las abrasiones eran superficiales y se catalogaron como trauma. Posteriormente, Sánchez Caraballo fue referido a una evaluación psicológica porque mostraba síntomas de depresión. A preguntas de la magistrado de instancia, declaró: "*Para que haya abrasión en la piel tiene que haber sido o raspada, la piel por ejemplo, porque el tipo de lesión era una serie de capilares que se ven en la piel que no se ha roto la integridad de la piel, no ha habido herida profunda, pero tiene que la piel haber sido expuesta a que se raspó con un material, o alguien o algo en la mano, o algo que lo tenga sobre la mano que den un golpe.*" (E.E.P. pág. 16.) Declaró, además, que si se traspasa la piel, pasa de ser abrasión a ser una herida. Normalmente un golpe común no causa un trauma, a menos que se raspe o deslice en una superficie que cause que los capilares se rompan. (E.E.P. pág. 16.)

Como primer testigo de la defensa declaró el apelante. Testificó que es el director de la escuela, que lleva once años como director y veinticinco como maestro. Testificó que el 31 de agosto de 2000, llegó a su trabajo como a las 7:15 a.m. y como a las 11:00 a.m. procedió a monitorear el área del comedor. Declaró que se sentó en el comedor a almorzar luego de permanecer un tiempo supervisando la fila, escuchó los ruidos que provenían de los tenis de los estudiantes. (E.E.P. pág. 17.) Declaró que observó a Sánchez Caraballo caminando cerca de él chillando los tenis y que le dijo: "*mira mi amor, vinimos a almorzar en paz y tranquilidad, no hay necesidad de hacer ese ruido*". Testificó que, luego de llamarle la atención a Sánchez Caraballo, éste chilló sus tenis con más fuerza. Según declaró el apelante, otros estudiantes se quejaron del ruido y le dijeron a Sánchez Caraballo que no lo hiciera más porque el apelante la había llamado la atención. Acto seguido, Sánchez Caraballo tiró la bandeja que tenía en sus manos contra el piso por lo cual el apelante lo tomó por el brazo y le pegó con la mano abierta por la parte posterior de la cabeza y le indicó que le estaba llamando la atención. (E.E.P. pág. 17.) El apelante testificó que Sánchez Caraballo le dijo: "*tu no me puedes regañar a mi,*" por lo cual se sintió ofendido. Luego, mientras el apelante agarraba a Sánchez Caraballo por el brazo le dijo: "*No espérate mi vida, vamos para la oficina.*" El apelante declaró que como a la 1:00 p.m. la madre de Sánchez Caraballo llegó a la escuela y éste le explicó que su hijo le había faltado el respeto y que con su mano abierta lo disciplinó como un padre de los estudiantes. (E.E.P. pág. 18.)

La segunda testigo de la defensa fue Tatty Escobar, quien declaró que dirige el centro de apoyo a personas con impedimento, Oficina de Yauco. Testificó que tiene una muy buena relación con el apelante, que éste tiene muy buena relación con sus hijos y que es una persona muy afectiva. A preguntas de la magistrado de instancia, Escobar declaró que entendía que el apelante necesita ayuda en cuanto al auto control. (E.E.P. pág. 21.)

Mediante Sentencia dictada el 5 de octubre de 2001, el apelante fue encontrado culpable del delito imputado y se le condenó a pagar $500.00 de multa, además de seis (6) meses de cárcel suspendidos y condicionados a cumplir con lo siguiente: ■

*"A) Realizará 4 horas semanales de labor comunitaria por las próximas 29 semanas (octubre 2001 a abril 2002) en el Albergue la Providencia (Carr. 14, Terrenos Hospital San Lucas, antes Hospital Distrito) y deberá hacer los arreglos con el Padre Francisco, Director del Albergue, para entrevista y establecer un plan de trabajo;*

*B) Se hará pruebas de dopaje;*

*C) Firmará los lunes y viernes el registro de la Oficina de los Alguaciles de este Tribunal;*

*D) No visitará lugares donde se vendan bebidas alcohólicas ni se relacionará con personas de dudosa reputación;*

*Se someterá a una evaluación psicológica."*

Inconforme con la Sentencia emitida, recurre a este Tribunal. El 8 de abril de 2002, presentó su alegato el Procurador General. Procedemos a resolver.

## II

En su recurso, el apelante plantea que incidió el Tribunal de Primera Instancia al determinar que en el caso de autos la prueba demostró la intención criminal de cometer el delito imputado; al determinar que la prueba desfilada demostró que los hechos imputados se realizaron con intención criminal; y al abusar de su discreción en la imposición de la Sentencia al apelante.

## III

El Artículo 15 del Código Penal, 33 L.P.R.A. sec. 3062, dispone que el delito es intencional:

*"(a) Cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; o*

*(b) Cuando el resultado, sin ser querido, ha sido previsto o pudo ser previsto por la persona como consecuencia natural o probable de su acción u omisión."*

En sus comentarios al Código Penal, la profesora Dora Nevares-Muñiz ■ señala lo siguiente en cuanto a ambas modalidades.

*"El delito intencional se describe en el acápite a) como aquél en que el resultado delictivo ha sido previsto y querido por la persona como consecuencia de su conducta; lo que equivale a una intención específica de llevar a cabo el delito. En la tradición civilista se conceptualiza bajo el nombre de dolo directo. Se trata de aquella situación en que la persona tiene un deseo expreso de efectuar el acto y quiere la producción del resultado, el cual ratifica con su actuación.*

*El acápite b) del artículo define lo que se denomina intención general como aquélla en que el resultado delictivo, aunque no fue querido, fue previsto o pudo serlo como consecuencia natural o probable de la acción u omisión realizada.*

*El concepto de intención general debe ser explicado siguiendo la doctrina desarrollada en el derecho angloamericano, de donde tiene su origen, y en particular del principio versari in re illicita, que establece que toda persona es responsable de las consecuencias naturales y probables de sus actos. Bajo ese concepto, la persona se responsabiliza penalmente por el resultado de su conducta si es que la misma está tipificada como delito, aunque no haya querido el resultado siempre que el mismo haya sido o pudiera ser previsto por una persona prudente y razonable.*

**El concepto de intención general del artículo no requiere prueba específica respecto a la intención, como en los casos de intención específica, sino que el comportamiento sea tal que demuestre una intención general de cometer el acto tipificado como delito. Tal intención se determinará de las circunstancias generales que rodean la conducta. El criterio determinante es si el resultado delictivo fue una consecuencia natural o probable de los actos del acusado. La persona se responsabiliza por el resultado de su conducta, aunque no lo haya querido, siempre que aquél sea previsible.** *El criterio de previsión a utilizar será el de hombre/mujer prudente y razonable, sin importar lo que la persona particular previó.*" (Citas omitidas.) (Énfasis suplido.)

Por otra parte, el Art. 94 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4032, dispone que "*toda persona que empleare fuerza o violencia contra otra para causarle daño*" incurre en el delito de agresión. La misma se considerará agravada cuando mediaren cualquiera de las circunstancias que enumeradas en el Art. 95, *supra*. Entre estas circunstancias se encuentra cuando se cometiere por un varón adulto en la persona de una mujer o niño, o por una mujer adulta en la de un niño menor de 16 años de edad.

De manera consistente con lo anterior, en *Pueblo v. Colón Rosa*, 96 D.P.R. 601, 609 (1968), el Tribunal Supremo resolvió que en el delito de agresión la intención de infligir daño corporal es un elemento subjetivo mental que se deduce de todos los hechos probados y circunstancias en que se perpetra la agresión.

### IV

Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos atendiendo los primeros dos señalamientos de error por estar íntimamente relacionados.

En su escrito, el apelante alega que en la situación de autos en ningún momento tuvo intención de causar daños a Sánchez Caraballo. Plantea que la prueba desfilada muestra una ausencia total de intención criminal y que los testigos que presenciaron los hechos están de acuerdo que las acciones indisciplinadas de Sánchez Caraballo provocaron las medidas correctivas del apelante.

Por otro lado, alega que la prueba de cargo no pudo establecer que todas las abrasiones que tenía Sánchez Caraballo fueran causadas por el apelante. Arguye que las mismas simplemente establecieron su existencia, cuya procedencia quedó enmarcada dentro del marco de las especulaciones. Sustenta su posición en que los únicos testigos que testificaron que el apelante tuvo contacto con Sánchez Caraballo, son los allegados a éste.

En el caso de autos, contrario a lo que plantea el apelante, la intención se determina de las circunstancias generales que moderan la conducta imputada. El criterio determinante es si el resultado delictivo fue una consecuencia natural o probable de los actos del imputado. Art. 15 del Código Penal, *supra*. Al imputado se le responsabiliza criminalmente por el resultado de su conducta, aunque no la haya querido, siempre que tal resultado hubiese sido razonablemente previsible. *Pueblo v. Colón*, 119 D.P.R. 482, 489 (1987).

Conforme surge de la exposición estipulada de la prueba, los daños ocasionados a la víctima fueron una

consecuencia previsible de los actos que el propio apelante admite haber cometido. (E.E.P. págs. 17-18.) Lo anterior fue confirmado con el testimonio de Juan Carlos Medina, quien testificó que vio cuando el apelante cogió por la oreja a Sánchez Caraballo, lo empujó contra la silla y comenzó a golpearlo por la espalda y el cuello. (E.E.P. pág. 5.) De esta forma, de los hechos y circunstancias en que se perpetró la agresión se puede deducir el elemento de intención de infligir daño corporal.

No obstante, ha sido resuelto en reiteradas ocasiones que al revisar cuestiones de hecho en convicciones criminales, la apreciación de la prueba corresponde al foro sentenciador y los tribunales apelativos sólo intervendrán con ella cuando exista error manifiesto, pasión, prejuicio o parcialidad. *Pueblo v. Acevedo Estrada*, ___ D.P.R. ___ (2000), **2000 J.T.S. 22**; *Pueblo v. Maisonave*, 129 D.P.R. 49 (1991). Tampoco se debe intervenir con la adjudicación de credibilidad que haya hecho el juzgador de hechos; *"ello es particularmente cierto cuando están en cuestión elementos altamente subjetivos... En tales casos, el juzgador de los hechos, que oyó y vio declarar a los testigos y apreció su demeanor, es quien está indudablemente en la mejor posición para aquilatar la prueba testifical desfilada".* Flores v. Soc. de Gananciales, 146 D.P.R. 45 (1998); *López Vicil v. ITT Intermedia*, 142 D.P.R. 857 (1997).

En el presente caso, no existe razón alguna para que intervengamos con la adjudicación de credibilidad que le mereció la prueba testifical al juzgador. Un análisis de la prueba presentada en el juicio, no causa insatisfacción o intranquilidad de conciencia que haga se estremezca el sentido básico de justicia. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986).

Por otra parte, no nos convence el planteamiento del apelante de que *"si Jorge (Sánchez Caraballo) no hubiera actuado indisciplinadamente y hubiese obedecido a la autoridad jerárquica que representa el Sr. Pietri, nada hubiese ocurrido."*█ Tampoco creemos que sea aplicable al caso de autos lo resuelto por el Tribunal Supremo de Puerto Rico en *Pueblo v. Ponce Avila*, 105 D.P.R. 213 (1976), como plantea el apelante. Allí se resolvió:

*"El castigo corporal moderado del discípulo por el maestro en casos de persistente indisciplina es un método de represión dirigido a mantener el orden en el salón de clase y a sostener los principios de decencia y de respeto al derecho ajeno que queremos preservar. Confiada al maestro la instrucción del hijo, debe entenderse implícita la autorización del padre para que en casos necesarios se restrinja la conducta del alumno por medios físicos."*

Aunque en la situación de autos el apelante respondió ante una situación de indisciplina de Sánchez Caraballo, los daños sufridos por éste no responden al castigo corporal moderado que exime de responsabilidad penal según lo resuelto en *Pueblo v. Ponce Avila, supra*. Tampoco surge de la prueba presentada que Sánchez Caraballo persistentemente incurriera en actos de indisciplina.

En conclusión, un examen minucioso y desapasionado de la exposición estipulada de la prueba refleja de manera meridiana que la prueba presentada por el Ministerio Público fue suficiente para sostener la convicción decretada contra el apelante.

Finalmente atendemos el tercer planteamiento del apelante en el cual señala que erró el Tribunal de Primera Instancia al abusar de su discreción en la imposición de la pena al apelante. El Art. 49(B) del Código Penal, 33 L.P.R.A. sec. ___, dispone:

*"**El Tribunal, en todo caso de delito menos grave, a solicitud de la persona convicta, discrecionalmente podrá imponer la pena de prestación de servicios en la comunidad en lugar de las penas de reclusión y multa establecidas en la parte especial de este Código. La pena establecida en este Artículo deberá ser cumplida dentro de un período de seis (6) meses a partir de la fecha de sentencia.**"*

*La pena de prestación de servicios en la comunidad consiste en la obligación impuesta a la persona convicta de, por un término no·mayor de noventa (90) días, y bajo las condiciones ·que determine el Tribunal, prestar servicios a una corporación, asociación benéfica con fines no pecuniarios, institución o agencia pública o institución con fines no pecuniarios. Las condiciones del servicio y el término de duración deberán ser aceptados por la persona convicta previo al acto de sentencia y será deber del Tribunal, en el uso de su discreción, asegurarse de que el término y las condiciones del servicio propendan al beneficio de la comunidad y al reconocimiento por parte de la persona convicta de las consecuencias de su conducta. El Tribunal tendrá en cuenta al momento de la fijación del término y las condiciones del servicio, la edad, estado de salud, ocupación y profesión u oficio del penado, así como cualquier otra circunstancia que permita una fijación adecuada a las circunstancias del penado y del caso.*

*En el caso de que la persona convicta quebrante las condiciones de la pena impuesta, cumplirá reclusión en la institución correspondiente por el término no cumplido de la sentencia...."* (Enfasis nuestro)

Comencemos señalando que el apelante, al discutir el error planteado, no presenta fundamentos válidos para sustentarlo. No obstante lo anterior, es evidente que el precepto antes citado faculta al tribunal *a quo* para que, a su discreción, pueda imponer la pena de prestación de servicios en la comunidad en lugar de las penas de reclusión y multa establecidas en la parte especial del Código Penal en todo caso de delito menos grave. Según surge de la Exposición de Motivos de la Ley Núm. 344 de 31 de diciembre de 1998, la cual enmendó el artículo arriba señalado, la imposición de esta pena contribuirá a mejorar el problema de hacinamiento carcelario y *"fomentará la rehabilitación de la persona convicta debido a que le permitirá la libertad de emplearse o conservar su empleo y relacionarse con sus familiares"*. Entendemos que, además de que el Tribunal tenía discreción para imponer la pena impuesta al apelante, ésta cumple con los propósitos que inspiraron la aprobación de esta ley. ■

**V**

Por los fundamentos arriba esbozados, se confirma la Sentencia apelada. El Juez Brau Ramírez disiente sin opinión escrita.

Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 94**

**1.** Dicho precepto tipifica el delito de agresión en su modalidad de delito grave.

**2.** En la minuta de la vista para dictar la sentencia se señala lo siguiente: *"El Tribunal ha examinado los dos informes pre-sentencia sometidos, al igual los abogados y la Fiscal. El Lic. Nieves manifiesta que el informe es favorable al acusado, a pesar de haber una declaración de culpabilidad, el acusado goza de no tener ningún tipo de récord criminal y que el tribunal dentro de su sana discreción sea leniente en la pena. La fiscal somete su caso."*

**3.** D. Nevares-Muñiz, *Código Penal Revisado y Comentado*, 5ta ed., Hato Rey, Puerto Rico, Instituto para el Desarrollo del Derecho, Inc., 2000, pág. 30.

**4.** Véase, escrito de apelación, pág. 8.

**5.** De igual forma señalamos que, según surge de la minuta de la vista para dictar sentencia, la representación legal del apelante le solicitó al foro de instancia que fuera leniente en la pena. Entendemos que el Tribunal accedió a la solicitud del apelante al imponer la pena, ya que tenía la discreción para imponerle hasta seis (6) meses de cárcel.